UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JANICE M. RIFFETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:24-cv-175-AZ |
| | ) |
| FRANK BISIGNARO, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Janice M. Riffett's appeal of the Commissioner of the Social Security Administration's (the "Commissioner") denial of disability benefits.[1] For the reasons discussed, the Court agrees with Riffett that flaws in the Administrative Law Judge's ("ALJ") written decision require a remand and the opportunity for Riffett to rebut the ALJ's conclusion that Dr. Smejkal's report was tainted by fraud or similar fault. The Court will reverse and remand the matter for further administrative proceedings.

## Background

Plaintiff Janice M. Riffett was 54-years old when she sought and was denied disability benefits. A.R. 607.[2] Riffett is a high school graduate who worked at Dober Chemical for 18 years in customer service and accounting, and later at Gurtler

---

[1] On August 5, 2024, both parties consented to the jurisdiction of the assigned Magistrate Judge for all purposes pursuant to 28 U.S.C. 636(c). *See* DE 14.

[2] Citations to the Administrative Record, filed at DE 10, are throughout as "A.R."

Chemical for 3.5 years in customer service. A.R. 615. For both jobs, she was primarily seated during work hours and did not have to lift anything. A.R. 48-49. In November 2021, an MRI revealed spinal cord impairments resulting from degenerative disc disease. A.R. 462-466. She underwent treatment including steroid and trigger point injections. A.R 706, 1145. Riffett underwent a consultative exam in March 2022 by Dr. J. Smejkal, where she demonstrated a lower-than-average grip strength in her left upper extremity. A.R. 609. The report of this exam was signed electronically by Dr. Smejkal on March 24, 2022. A.R. 610.

Riffett filed an application for Social Security Disability Insurance and Supplemental Security Income benefits on January 5, 2022. A.R. 10. In her applications, she alleged a disability onset date of November 24, 2021. *Id.* Her claims were denied in the initial application, and upon reconsideration, and Riffett thereafter requested a hearing before an ALJ. *Id.* On August 1, 2023, the ALJ held a telephonic hearing at which Riffett and a Vocational Expert (VE) testified. *Id.*

At the beginning of the hearing, the following colloquy took place:

ALJ: All right. I do need to bring something to your attention. So, this consultative examination at 6F at NWI Patient Care.

ATTY: Yes.

ALJ: Was signed – are you aware that –

ATTY: Yeah, I'm aware who she is.

ALJ: So, we have to disregard that document and since the record is complete anyway, I don't think we need to send her to another CE, but it's an unfortunate situation and I think that they're still investigating that, so, I will be disregarding that. And I think – I think the doctor's death certificate is in the file, it's – yeah, it's at

2

> 20F, so, all right. So, I'm going to admit into evidence Exhibits 1A through 4A; 1B through 14B; 1D through 10D; 1E through 1E through 12E; and 1F to 29F are admitted into evidence without objection, the record is closed.

A.R. 40. After this initial ruling on Dr. Smejkal's report, the hearing proceeded.

On September 11, 2023, the ALJ issued a written opinion denying benefits. A.R. 10-23. Plaintiff timely appealed to the Appeals Council and on March 15, 2024, the Appeals Counsel denied Plaintiff's Request for Review. A.R. 1. Plaintiff timely filed her complaint for District Court review.

Because the Appeals Council denied review, the ALJ's written decision is the final decision for review by the Court. *See* 20 C.F.R. §§ 404.981, 416.1481. In that written decision, the ALJ followed the standard five-step process to determine whether Riffett was disabled. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 24, 2021. A.R. 12.

At step two, the ALJ determined that Riffett suffered from the following severe impairments: "degenerative disc disease of the cervical, thoracic, and lumbar spine; degenerative joint disease of the left shoulder with tendinopathy; mild carpal tunnel syndrome bilaterally; psoriatic arthritis; and obesity (20 CFR 404.1520(c))." *Id.* The ALJ found her other impairments to be non-severe, though he considered all of Riffett's impairments in his decision. A.R. 12-13. The ALJ utilized the four broad functional areas known as "paragraph B" criteria to determine that Riffett's mental functioning impairments were non-severe. A.R. 13-15.

At step three, the ALJ concluded that Riffett does "not have an impairment or combination of impairments that meet or medically equals the severity of" any applicable Listing which would presumptively entitle her to a finding of disability. A.R. 15.

At step four, the ALJ determined Riffett's Residual Functional Capacity (RFC). The ALJ determined Riffett's RFC as:

> [P]erform[ing] light work as defined in 20 CFR 404.1567(b) except with the following limitations. Occasionally push and pull with the bilateral upper extremities, no ladders, ropes, or scaffolds, occasionally climb ramps, stairs, occasionally balance, stoop, kneel, crouch, and crawl; occasional overhead reaching with the left upper extremity; frequent reaching in all other directions; avoid concentrated exposure to hazards such as machinery and heights; frequent handling, fingering, and feeling with the bilateral upper extremities; must be permitted to turn at the hips to view from side to side rather than turning the head and neck; if seated, turning in an office chair would be ideal.

A.R. 16. The ALJ stated, as is standard, that he "considered all symptoms … as consistent with the objective medical evidence and other evidence" in arriving at this RFC. *Id.* The ALJ further considered Riffett's non-severe impairments and how they may have limited her ability to do work-related activities. A.R. 17. He noted the surgery for her hands, and that wrist guards did not help. *Id.* He found that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." A.R. 18. The ALJ noted medical records of physical examinations of her hands mostly reflect full grip and motor strength. A.R. 19.

Concerning medical opinion evidence, the ALJ did not consider Dr. Smejkal's internal medicine consultative examination and opinion, signed electronically on

4

March 24, 2022. A.R. 20. The evidence shows the Dr. Smejkal died on August 11, 2021. A.R. 1229. Considering the possibility that someone else affixed Dr. Smejkal's signature to the report, the ALJ held he had reason to believe fraud or similar fault may have occurred. A.R. 21. Specifically, pursuant to Sections 205(u) and 1631(e)(7) of the Social Security Act, similar fault may have occurred if "an incorrect or incomplete statement that is material to the determination is knowingly made" or "information that is material to the determination is knowingly concealed." *Id.* Based on this determination, the ALJ did not consider the report or the conclusions therein.

With the RFC in mind, at step four, the ALJ concluded that Riffett could perform her past relevant work as a "customer service representative/order clerk." A.R. 21. This finding tracked the Vocational Expert's (VE) testimony with regard to Riffett and her past work. Because the ALJ determined that Riffett could perform her past relevant work as a customer service representative, the ALJ determined that she was not disabled. Accordingly, the ALJ did not need to proceed to step five and denied Riffett's claim.

## Discussion

The Social Security Act authorizes judicial review of a final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "The phrase 'substantial

5

evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). "The threshold for this standard 'is not high.'" *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (quoting *Biestek* 587 U.S. at 103). "Substantial evidence in this context means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting marks omitted).

Given this deferential level of review of agency decisions, the Court reviews the administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question is not whether the claimant is in fact disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

An ALJ must articulate their analysis of the evidence in order to allow the reviewing court to trace the path of their reasoning and to be assured that the ALJ

6

considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ "has a basic obligation to develop and full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2019) (citations omitted). "An ALJ need not specifically address every piece of evidence," *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2014), but they likewise cannot ignore entire lines of evidence that undercut or contravene their conclusions. "Remand is necessary when it is unclear if the ALJ examined the full range of medical evidence, or if the court cannot trace the ALJ's path of reasoning." *Wolford v. Kijakazi*, 658 F. Supp. 3d 664, 668 (N.D. Ind. 2023) (cleaned up). The Court "cannot uphold and administrative determination that failed to explain the outcome adequately." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (citing *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010)).

Riffett argues three errors on appeal: 1) the ALJ erred in failing to acknowledge and consider evidence of limitations on Riffett's grip strength and mental functioning; 2) the ALJ erred by refusing to evaluate Dr. Smejkal's report and failing to allow Riffett the opportunity to rebut the ALJ's conclusion of fraud or similar fault; and 3) the ALJ erred by failing to explain if or how he considered Riffett's limitations in daily living, the treatment she received, or her previous consistent work activity before concluding her subjective allegations were inconsistent with the evidence. DE 15 at 6.

7

Riffett's second argument raises a question of law. She argues that the ALJ should not have unilaterally excluded Dr. Smejkal's report. Riffett claims she should have been given the opportunity to at least attempt to rebut the ALJ's conclusions that fraud or similar fault made the report inadmissible. In support of her argument, Riffett relies heavily on *Jaxson v. Saul*, 970 F.3d 775, 778 (7th Cir. 2021). In *Jaxson*, an ALJ denied Jaxson's claim for benefits after a complex fraud scheme between an ALJ, a lawyer, and physicians came to light. *Jaxson*, 970 F.3d at 775-76. One of the physicians that was involved in writing fabricated medical reports was the same physician whose report Jaxson relied upon when he was first granted benefits. *Id.* Upon reconsideration of Jaxson's benefits, the ALJ, following instruction from the Inspector General, completely disregarded the report as tainted by fraud. *Id.* Jaxson appealed, arguing not that the ALJ was incorrect in his findings or reasoning, but only that ALJ should have considered the report or heard arguments on whether or not it was admissible rather than unilaterally disregarding it. *Id.* at 777.

Judge Easterbrook, writing for the Seventh Circuit, analogized a hearing before an ALJ to a trial, though "less formal." *Id.* at 777. While the hearing is informal and inquisitorial, "important aspects of the proceedings [cannot] be entirely one-sided. *Id.* "To decide whether there is reason to believe that fraud or similar fault was involved in the providing of [Huffnagle's] evidence an ALJ needs to hear from Jaxson." *Id.* (internal quotations omitted). Flowing from 42 U.S.C. § 405(b)(1)'s mandate that applicants must be given "reasonable notice and opportunity for a hearing," the Seventh Circuit held that the ALJ must at least give the applicant a

8

chance to rebut the determination of fraud or similar fault. *Id.* at 778. This does not require a full evidentiary hearing, but rather any chance for arguments, similar to those made for a motion *in limine*, is sufficient. *Id.*[3]

Here, it is hard to argue that Riffett was given the opportunity to rebut the ALJ's conclusion. By concluding at the outset that "we have to disregard that document," the ALJ made an unequivocal decision to exclude the medical report. A.R. 40. There is nothing in the record indicating that Riffett's attorney was given the opportunity to respond before or after the ALJ's conclusion. Instead after asking Riffett's attorney to acknowledge that he knew who Dr. Smejkal was, the ALJ immediately moved to admitting the other evidence and proceeding with the hearing. The Court makes no prediction on whether or not Riffett will be successful; however, Riffett must be given the chance to persuade the ALJ that there was no fraud or similar fault. In other words, she "may have a hard time… [but s]he is entitled to try," *Jaxson*, 970 F.3d at 778.

In his response, the Commissioner gives short shrift to this argument, noting only that since the attorney knew about the issue with Dr. Smejkal's report, that was sufficient notice under 42 U.S.C. § 405(b)(1). DE 20 at 3-4. Yet the ALJ's language indicated no leeway in his decision, nor did he ask if the attorney objected to the

---

[3] "Nor would any potential burdens on the agency—whether financial or administrative—be significant. Contrary to SSA's assertions, there is no need for complex evidentiary hearings or mini-trials here. Rather, a procedure akin to that used by federal courts to resolve a motion *in limine* would suffice—*i.e.*, each side arguing for or against the admissibility of the allegedly fraudulent evidence, either orally or through briefs. *See Jaxson*, 970 F.3d at 778 (suggesting the use of this procedure at SSA redetermination hearings)." *Kirk v. Comm'r of Soc. Sec. Admin.*, 987 F.3d 314, 327–28 (4th Cir. 2021).

9

exclusion.[4] The Commissioner further argues that the deferential standard at this stage of judicial review means this Court should excuse any error by the ALJ from not allowing Riffett to respond to his conclusion of fraud. DE 20 at 4. This too misses the mark, as an error of law results in a remand "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citations omitted).

Because this issue is dispositive in its own, the Court does not need to address Riffett's other two arguments regarding her grip strength and mental functioning, and her subjective allegations of her own impairments. That said, Riffett should be prepared to raise those issues in her subsequent proceeding.

## Conclusion

For the reasons discussed, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

SO ORDERED this 21st day of August 2025.

/s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT

---

[4] The Commissioner does not argue that Riffett waived the issue by failing to object, and such an argument would likely be unavailing. Neither the Supreme Court nor the Seventh Circuit have held that all arguments must be raised at an ALJ hearing to preserve them for judicial review. *See Wilder v. Kijakazi*, 22 F.4th 644, 652 n.8 (7th Cir. 2022).